**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **STEPHEN MURRAY MITCHELL,** | ) | |
| | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Cv. No. 17-02341** |
| | ) | **Cr. No. 99-20272** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
|     **Respondent.** | ) | |

---

**ORDER**

---

Before the Court is Stephen Murray Mitchell's *pro se* second or successive motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "Johnson § 2255 Motion"). (17-02341: ECF No. 1-1 at 3.[1]) Mitchell challenges his sentence in Criminal Case No. 99-20272,[2] seeking relief under Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson"). The United States (the "Government") has responded. (17-02341: ECF No. 6 at 22.) Mitchell has replied. (17-02341: ECF No. 7 at 69.) With leave of Court, Mitchell filed a supplemental reply. (17-02341: ECF No. 8 at 96; see ECF No. 8-3 at 102.)

---

[1] References to "17-02341" are to filings in Mitchell v. United States, Case No. 2:17-cv-02341-SHM-tmp (W.D. Tenn.). Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

[2] References to "99-20272" are to filings in United States v. Mitchell, Case No. 2:99-cr-20272-JTF-1 (W.D. Tenn.).

Also before the Court in Case No. 17-02341 are the following motions: (1) Mitchell's "Motion for Disclosure & Discovery" (the "17-02341 Motion for Discovery"); (2) Mitchell's "Motion to Dismiss for Failure to State a Claim Under Fed. Civ/Crm. R. 12(b)(6)" (the "17-02341 First Motion to Dismiss"); (3) Mitchell's "Motion for Dismissal of Action" (the "17-02341 Second Motion to Dismiss"); (4) Mitchell's "Motion to Modify the Record" (the "17-02341 Motion to Modify"); and (5) Mitchell's "Motion to Appoint Special Master, & Motion to Appoint Special Prosecutor, to Address Pretrial & Postrial Matters that Cannot Be Effectively & Timely Addressed by Judge Samuel H. Mays, Jr.; and to Investigate & Prosecute Criminal Conduct Surrounding the Arrest & Prosecution of Petitioner Stephen Murray Mitchell, Pursuant to 28 U.S.C.S. §§ 593 & 626" (the "17-02341 Motion to Appoint"). (17-02341: ECF No. 9 at 103; ECF No. 10 at 105; ECF No. 11 at 109; ECF No. 12 at 140; ECF No. 13 at 143.)[3]

Also before the Court in Case No. 99-20272 are the following motions: (1) Mitchell's "Motion to Dismiss Judgment No. 99-20272" (the "99-20272 First Motion to Dismiss"); (2) Mitchell's "Motion for Leave to Amend Pleading in Order to Request Time Served" (the "99-20272 Motion to Amend");

---

[3] As discussed below, several of the filings and motions docketed in Case No. 17-02341 were originally docketed in Case No. 15-02485. (17-02341: see ECF No. 5 at 17.) References to "15-02485" are to filings in Mitchell v. United States, Case No. 2:15-cv-02485-SHM-tmp (W.D. Tenn.).

(3) Mitchell's "Motion Under Fed. Crim. Rule 36" (the "99-20272 Motion Under Rule 36"); (4) Mitchell's "Motion for Bond Pending Sentence, and in the Alternative, Motion for Emergency Sentence Hearing" (the "99-20272 First Motion for Hearing"); (5) Mitchell's "Motion to Dismiss for Failure to State a Claim Under Fed. Civ/Crm. R. 12(b)(6)" (the "99-20272 Second Motion to Dismiss"); (6) Mitchell's "Motion for Dismissal of Action" (the "99-20272 Third Motion to Dismiss"); and (7) Mitchell's "Motion for Bond Pending Sentence, and in the Alternative, Motion for Emergency Sentence Hearing" (the "99-20272 Second Motion for Hearing"). (99-20272: ECF No. 205 at 121; ECF No. 206 at 274; ECF No. 209 at 358; ECF No. 211 at 378; ECF No. 213 at 386; ECF No. 214 at 391; ECF No. 215 at 422.)

For the following reasons, the Johnson § 2255 Motion is GRANTED. The 17-02341 Motion to Modify and the 17-02341 Motion to Appoint are DENIED. The 17-02341 Motion for Discovery, the 17-02341 First Motion to Dismiss, the 17-02341 Second Motion to Dismiss, the 99-20272 First Motion to Dismiss, the 99-20272 Motion to Amend, the 99-20272 Motion Under Rule 36, the 99-20272 First Motion for Hearing, the 99-20272 Second Motion to Dismiss, the 99-20272 Third Motion to Dismiss, and the 99-20272 Second Motion for Hearing are DENIED as moot.

## I. Background

### A. Case No. 99-20272

Following a jury trial, on December 15, 2000, Mitchell was convicted of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). (99-20272: ECF No. 124 at 74; ECF No. 143 at 83.)

On January 30, 2001, the United States Probation Office prepared a Presentence Investigation Report (the "PSR"). (PSR at 1.) The PSR calculated Mitchell's guidelines sentencing range pursuant to the 2000 edition of the United States Sentencing Commission Guidelines Manual (the "U.S.S.G."). (Id. ¶ 11 at 5.)

Mitchell was designated an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"). (Id. ¶ 19 at 6.) The PSR identified at least five ACCA-predicate convictions in Mitchell's criminal history. (Id. ¶¶ 29-31, 35-36 at 9-11, 13-14.) Mitchell's guidelines range was 235-293 months in prison. (Id. ¶ 72 at 26.) Mitchell's statutory minimum sentence was 180 months. (Id. ¶ 71 at 26 (citing 18 U.S.C. § 924(e)).)

On July 26, 2001, the Court sentenced Mitchell to 250 months in prison, followed by three years' supervised release. (99-20272: ECF No. 142.) Judgment was entered on August 1, 2001. (99-20272: ECF No. 143 at 83.)

4

Mitchell appealed, and the Court of Appeals for the Sixth Circuit affirmed on October 21, 2002. United States v. Mitchell, 48 F. App'x 955 (6th Cir. 2002).

**B.   Case No. 03-02753**

On October 8, 2003, Mitchell filed a motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (03-02753: ECF No. 1.[4]) On March 25, 2005, the Court denied Mitchell's § 2255 motion. (03-02753: ECF No. 13 at 12.) Among other grounds, Mitchell contended that his sentence exceeded the statutory maximum. (See id. at 3.) The Court rejected that argument, finding that Mitchell's claim was procedurally defaulted. (Id. at 11-12.) Mitchell filed a motion for reconsideration, which was denied on May 17, 2005. (03-02753: ECF No. 16 at 17.) Following entry of judgment, Mitchell filed a notice of appeal, and the Court of Appeals denied a certificate of appealability on February 21, 2006. Mitchell v. United States, No. 05-6005 (6th Cir. Feb. 21, 2006), cert. denied, 549 U.S. 1012 (2006).

**C.   Case No. 08-02528**

On August 6, 2008, Mitchell filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (08-02528: ECF No. 1 at

---

[4] References to "03-02753" are to filings in Mitchell v. United States, Case No. 2:03-cv-02753-BBD-dkv (W.D. Tenn.).

1.[5])  On March 11, 2009, the Court denied Mitchell's § 2241 petition.  (08-02528: ECF No. 4 at 57.)  Among other grounds, Mitchell challenged his armed-career-criminal designation and his status as a convicted felon at the time of the indictment in Criminal Case No. 99-20272.  (Id. at 60.)  The Court rejected Mitchell's claims because, *inter alia*, (1) they were not claims properly raised in a § 2241 petition and (2) Mitchell made no valid argument that he was actually innocent of his 18 U.S.C. § 922(g) offense.  (Id. at 63-64.)  Following entry of judgment, Mitchell appealed, and the Court of Appeals affirmed the judgment on January 26, 2010.  Mitchell v. Castillo, No. 09-5545 (6th Cir. Jan. 26, 2010), cert. denied, 562 U.S. 807 (2010).

### D.  Case No. 10-02958

On December 30, 2010, Mitchell filed a "Pro Se Motion to Nullify Order for Want of Jurisdiction," docketed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  (10-02958: ECF No. 1 at 1.[6])  On May 27, 2011, the Court denied Mitchell's § 2241 petition.  (10-02958: ECF No. 9 at 59.)  Among other grounds, Mitchell argued that he was erroneously sentenced as an armed-career-criminal because three of the prior Tennessee burglary convictions on which the sentencing court had relied

---

[5] References to "08-02528" are to filings in Mitchell v. Castillo, Case No. 2:08-cv-02528-BBD-egb (W.D. Tenn.).

[6] References to "10-02958" are to filings in Mitchell v. Castillo, Case No. 2:10-cv-02958-SMH-cgc (W.D. Tenn.).

did not qualify as ACCA predicates. (10-02958: ECF No. 8 at 33.)

The Court rejected Mitchell's claims because (1) they were not claims properly raised in a § 2241 petition and (2) Mitchell made no valid argument that he was actually innocent of his 18 U.S.C. § 922(g) offense. (10-02958: ECF No. 9 at 55-56.) As an alternative basis for its decision, the Court opined that Mitchell had been sentenced properly as an armed career criminal. (Id. at 56.) The Court opined that Mitchell's two Tennessee convictions for burglary of a building were properly counted as predicate offenses. (Id. at 58-59.) The Court also opined that Mitchell's Tennessee third degree burglary conviction was properly counted, explaining:

> Under the law at the time, "[b]urglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house, with the intent to commit a felony." Tenn. Code Ann. § 39-3-404(a)(1) (1986). That definition is similar to the definition of burglary of a building and is, for the same reasons, a generic burglary capable of constituting a violent felony under the ACCA.

(Id. at 59.)

Following entry of judgment, Mitchell moved for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure, which the Court denied. (10-02958: ECF No. 15 at 136.) Mitchell appealed the judgment, and the Court of Appeals affirmed on January 26, 2010, deciding that Mitchell's claims

were not properly raised in a § 2241 petition. <u>Mitchell v.</u>
<u>United States</u>, No. 11-5790 (6th Cir. Oct. 12, 2012), <u>cert.</u>
<u>denied</u>, 133 S. Ct. 2010 (2013). The Supreme Court's order
denying certiorari stated, "As petitioner has repeatedly abused
this Court's process, the Clerk is directed not to accept any
further petitions in noncriminal matters from petitioner unless
the docketing fee required by Rule 38(a) is paid and petition
submitted in compliance with Rule 33.1." <u>Mitchell</u>, 133 S. Ct.
at 2010.

   **E.  Case No. 12-02930**

   On October 23, 2012, Mitchell filed a "Motion Under 28
U.S.C. § 1331" seeking to "nullify" his judgment in Criminal
Case. No. 99-20272.[7]  (12-02930: ECF No. 1 at 1.[8])  Mitchell
moved to amend his motion to request that his sentence be
corrected to time served under Rule 35(a) of the Federal Rules
of Criminal Procedure.  (12-02930: ECF No. 9 at 99.)  Mitchell
sought relief under Rule 35(a) on the ground that five of the
prior Tennessee convictions on which the sentencing court had
relied in sentencing Mitchell as an armed career criminal -- his
three  burglary  convictions  and  two  aggravated  assault

_____

[7] Making substantially similar arguments, on January 8, 2013,
Mitchell filed the 99-20272 First Motion to Dismiss.  (99-20272:
ECF No. 205 at 121.)

[8] References to "12-02930" are to filings in <u>Mitchell v. United</u>
<u>States</u>, Case No. 2:12-cv-02930-SHM-tmp (W.D. Tenn.).

convictions -- did not qualify as ACCA predicates.[9] (Id. at 99-100.)

On January 2, 2014, the Court denied Mitchell's "Motion Under 28 U.S.C. § 1331" as amended. (12-02930: ECF No. 10 at 144-45.) The Court decided that Mitchell's claims were not properly raised. (Id.) Following entry of judgment, Mitchell moved for reconsideration, which the Court denied. (12-02930: ECF No. 15 at 166.) Mitchell appealed the judgment, and the Court of Appeals affirmed on April 2, 2015, agreeing that Mitchell's claims were not properly raised.[10] Mitchell v. United States, No. 14-5103 (6th Cir. Apr. 2, 2015).

### F. Case No. 13-02412

On June 12, 2013, Mitchell filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (13-02412: ECF No. 1 at 1.[11]) Mitchell argued that the aggravated assault convictions on which the sentencing court had relied in sentencing him as an armed career criminal no longer qualified as ACCA predicates following intervening Supreme Court and Sixth Circuit authority.

---

[9] Making identical arguments, Mitchell contemporaneously filed the 99-20272 Motion to Amend. (99-20272: ECF No. 206 at 274.)

[10] Making arguments similar to those made before the Court of Appeals (and rejected by the Court of Appeals' April 2, 2015 opinion), Mitchell contemporaneously filed the 99-20272 Motion Under Rule 36. (99-20272: ECF No. 209 at 358.)

[11] References to "13-02412" are to filings in Mitchell v. Stephens, Case No. 2:13-cv-02412-SMH-cgc (W.D. Tenn.).

(Id. at 3-4.)   The Court denied the motion on July 10, 2013.
(13-02412: ECF No. 3 at 54-55.)   The Court decided that
Mitchell's claims under § 2241 were not properly raised.   (Id.
at 54.)   The Court explained that, even without the two
aggravated assault convictions, Mitchell "would still have three
convictions for violent felonies, which are, by themselves,
sufficient to qualify him as an armed career criminal." (Id. at
54-55.)

Following entry of judgment, on July 15, 2013, Mitchell
filed a Motion for Leave for Supplemental Pleading, raising new
arguments based on Descamps v. United States, 133 S. Ct. 2276
(2013).   (13-02412: ECF No. 5 at 58.)   The Court denied the
motion because it was not timely and because Mitchell's new
arguments and authority did not undermine the Court's conclusion
that Mitchell's claims were not properly raised in a § 2241
petition.   (13-02412: ECF No. 6 at 63.)   Mitchell did not appeal
the judgment.

### G.   Case No. 13-5977

On July 23, 2013, Mitchell moved the Court of Appeals for
an order authorizing this Court to consider a second or
successive motion under 28 U.S.C. § 2255.   Mitchell challenged
his armed-career-criminal status, arguing that, after the
Supreme Court's decision in Begay v. United States, 553 U.S. 137
(2008), Mitchell's aggravated assault convictions no longer

10

qualified as ACCA predicates and that, after the Supreme Court's decision in Descamps, Mitchell's burglary convictions no longer qualified. The Court of Appeals denied the motion, explaining that Mitchell had not "establish[ed] a prima facie showing because the Supreme Court ha[d] not made Begay or Descamps retroactive on collateral review." In re Mitchell, No. 13-5977, slip op. at 2 (6th Cir. Jan. 15, 2014).

### H. Subsequent Proceedings

On July 23, 2015, Mitchell filed a "Writ of Habeas Corpus Under 28 U.S.C. § 2241 and/or Writ of Scire Facias Under 28 U.S.C. § 1367(a)," which was docketed in Case No. 15-02485. (15-02485: ECF No. 1 at 1.) On November 4, 2015, Mitchell filed a "Motion to Withdraw 28 U.S.C. § 2241 Petition." (15-02485: ECF No. 6 at 54.) The Court granted the motion, dismissed Case No. 15-02485, and entered judgment. (15-02485: ECF No. 7 at 56; ECF No. 8 at 57.)

On October 23, 2015, Shortly before filing his motion to withdraw, Mitchell again moved the Court of Appeals for an order authorizing this Court to consider a second or successive motion under 28 U.S.C. § 2255. Mitchell sought to challenge his ACCA-enhanced sentence under Johnson. The Court of Appeals granted the motion on June 23, 2016, explaining, "Because the Supreme Court has held that Johnson announced a new substantive rule of constitutional law that is categorically retroactive to cases on

11

collateral review, <u>Welch v. United States</u>, 136 S. Ct. 1257, 1268 (2016), Mitchell has made a prima facie showing that he is entitled to relief." <u>In re Mitchell</u>, No. 15-6178, slip op. at 1 (6th Cir. June 23, 2016).

Subsequent filings related to Mitchell's <u>Johnson</u> challenge were docketed in Case No. 15-02485. On August 5, 2016, this Court ordered the Government to respond to Mitchell's <u>Johnson</u> challenge. (15-02485: ECF No. 10 at 58.) The Government responded on August 22, 2016, contending that Mitchell is not entitled to relief under <u>Johnson</u>. (15-02485: ECF No. 14 at 69.) On August 29, 2016, Mitchell filed a "Traverse Under 28 U.S.C. § 2248," which the Court construes as a reply. (15-02485: ECF No. 15 at 116.) On August 30, 2016, Mitchell filed a "Motion to Amend Traverse Under 28 U.S.C. § 2255," which the Court granted and construes as a supplemental reply. (15-02485: ECF No. 16 at 143; ECF No. 19 at 155.) The Government's response, Mitchell's reply, and Mitchell's supplemental reply subsequently were docketed in Case No. 17-02341. (17-02341: ECF No. 6 at 22; ECF No. 7 at 69; ECF No. 8 at 96.)

Mitchell filed several motions in Case No. 15-02485 that subsequently were docketed in Case No. 17-02341. Originally filed on September 1, 2016, Mitchell's 17-02341 Motion for Discovery seeks a court order directing the Assistant United States Attorney to disclose to Mitchell records related to an

"October 19, 1999, driving while license was suspended crime/charge, Shelby County Case No. 99155572." (15-02485: ECF No. 17 at 149; 17-02341: ECF No. 9 at 103.) Originally filed on September 1, 2016, Mitchell's 17-02341 First Motion to Dismiss asks the Court to dismiss the judgment in Criminal Case No. 99-20272 under "Fed. Civ/Crm. R. 12(b)(6)." (15-02485: ECF No. 18 at 151; 17-02341: ECF No. 10 at 105.) Originally filed on October 19, 2016, Mitchell's 17-02341 Second Motion to Dismiss asks the Court to dismiss the judgment in Criminal Case No. 99-20272 on the ground that the Court may not rely on the records of Mitchell's prior convictions provided by the Government for purposes of the Court's assessment of Mitchell's Johnson challenge. (15-02485: ECF No. 20 at 156; 17-02341: ECF No. 11 at 109.) Originally filed on May 25, 2017, Mitchell's 17-02341 Motion to Modify is a motion directed to the Court of Appeals related to a petition for writ of mandamus Mitchell filed in that court on May 15, 2017. (15-02485: ECF No. 26 at 305; 17-02341: ECF No. 12 at 140.)

Mitchell has filed the following motions in Case No. 99-20272. On July 18, 2016, Mitchell filed the 99-20272 First Motion for Hearing. (99-20272: ECF No. 211 at 380.) In that motion, Mitchell seeks to be released on bond pending the Court's ruling on the Johnson § 2255 Motion and, in the alternative, an "emergency sentence hearing" for the

13

adjudication of Mitchell's _Johnson_ challenge. (_Id._) On September 1, 2016, Mitchell filed the 99-20272 Second Motion to Dismiss. (99-20272: ECF No. 213 at 386.) In that motion, Mitchell seeks substantially the same relief he seeks in the 17-02341 First Motion to Dismiss. (_Id._) On October 19, 2016, Mitchell filed the 99-20272 Third Motion to Dismiss. (99-20272: ECF No. 214 at 391.) In that motion, Mitchell seeks substantially the same relief as he seeks in the 17-02341 Second Motion to Dismiss. (_Id._) On February 22, 2017, Mitchell filed the 99-20272 Second Motion for Hearing. (99-20272: ECF No. 215 at 422.) In that motion, Mitchell seeks substantially the same relief as he seeks in the 99-20272 First Motion for Hearing and makes additional arguments in support of his _Johnson_ challenge. (_Id._)

On May 16, 2017, the Clerk of Court opened Case No. 17-02341. On May 30, 2017, the Court directed the Clerk to docket in Case No. 17-02341 filings and motions related to Mitchell's _Johnson_ challenge that were originally filed in Case No. 15-02485. (17-02341: ECF No. 5 at 17.)[12] The Court decided that, because Case No. 15-02485 had been closed following entry of judgment, it would not be appropriate to resolve Mitchell's

---

[12] On June 19, 2017, after the Clerk had docketed those filings and motions, Mitchell filed the 17-02341 Motion to Appoint. (17-02341: ECF No. 13 at 143.) That motion seeks various forms of relief pursuant to 28 U.S.C. §§ 593, 626, and 753(f), and 42 U.S.C. §§ 1985, 1986, and 1987.

<u>Johnson</u> challenge in that case. The Court decided that Mitchell's <u>Johnson</u> challenge should be decided in Case No. 17-02341. Mitchell's <u>Johnson</u> § 2255 Motion is ripe for review.

## II. Standard of Review

Mitchell seeks relief under 28 U.S.C. § 2255. Under § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" <u>McPhearson v. United States</u>, 675 F.3d 553, 558–59 (6th Cir. 2012) (quoting <u>Mallett v. United States</u>, 334 F.3d 491, 496–97 (6th Cir. 2003)).

A prisoner must file his § 2255 motion within one year of the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in

violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If a prisoner seeks to file a second or successive § 2255 motion, the court of appeals must first certify that the motion contains:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

A § 2255 motion is not a substitute for a direct appeal. Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013). "[C]laims not raised on direct appeal," which are thus procedurally defaulted, "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (citing cases); see

also, e.g., Jones v. Bell, 801 F.3d 556, 562 (6th Cir. 2015) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

In the procedural-default context, the cause inquiry "'ordinarily turn[s] on whether . . . some objective factor external to the defense impeded counsel's efforts'" to raise the issue on direct appeal. Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration and ellipses in Ambrose); see also United States v. Frady, 456 U.S. 152, 167–68 (1982) (cause-inquiry standards in § 2254 cases apply to § 2255 cases). "[F]or cause to exist, an 'external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim.'" Bates v. United States, 473 F. App'x 446, 448–49 (6th Cir. 2012) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)) (emphasis removed). To show prejudice to excuse default, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168; see also Ambrose, 684 F.3d at 649.

Alternatively, a petitioner may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 623–24 (1998). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more

likely than not that no reasonable juror would have convicted him." Id. at 623 (quotation marks omitted) (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)).

After a petitioner files a § 2255 motion, the Court reviews it and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing Section 2255 Proceedings for the U.S. District Courts ("§ 2255 Rules") at Rule 4(b). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The § 2255 movant is entitled to reply to the government's response. Id. at Rule 5(d). The Court may also direct the parties to provide additional information relating to the motion. Id. at Rule 7(a). If the district judge addressing the § 2255 motion is the same judge who oversaw the trial, the judge "'may rely on his or her recollection of the trial'" in denying the motion. Christopher v. United States, 605 F. App'x 533, 537 (6th Cir. 2015) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).

## III. Analysis

### A.   Preliminary Matters

The 99-20272 First Motion to Dismiss, the 99-20272 Motion to Amend, and the 99-20272 Motion Under Rule 36 raise arguments and seek relief substantially similar to arguments Mitchell made and relief he sought in Case No. 12-02930 and on appeal of the judgment in that action. This Court and the Court of Appeals have addressed and rejected those arguments and denied the relief sought in those motions. The 99-20272 First Motion to Dismiss, the 99-20272 Motion to Amend, and the 99-20272 Motion Under Rule 36 are DENIED as moot.

The 17-02341 Motion to Modify is a motion directed to the Court of Appeals, a copy of which was filed as a motion in this Court. This Court does not have jurisdiction to address motions filed in the Court of Appeals. The 17-02341 Motion to Modify is DENIED.

The 17-02341 Motion to Appoint seeks relief that the Court is without authority to grant in § 2255 proceedings. The 17-02341 Motion to Appoint is DENIED.

### B.   Basis and Timeliness of § 2255 Motion

Mitchell challenges his sentence based on Johnson, which provides a new rule of constitutional law made retroactively applicable to cases on collateral review. Welch, 136 S. Ct. at 1268. Johnson was decided on June 26, 2015, and Mitchell filed

a motion seeking authorization from the Court of Appeals to file a second or successive § 2255 motion on November 6, 2015. Mitchell filed that motion within one year of <u>Johnson</u>. The Court of Appeals granted the motion and transferred the case to this Court. Mitchell's <u>Johnson</u> § 2255 Motion is timely. <u>See</u> 28 U.S.C. §§ 2255(f)(3) and (h).

Mitchell's <u>Johnson</u> § 2255 Motion alleges constitutional error that resulted in a sentence that now exceeds the statutory limits applicable to his offense. <u>See</u> <u>McPhearson</u>, 675 F.3d at 559. The United States does not argue that Mitchell's <u>Johnson</u> challenge is procedurally defaulted. Mitchell did not challenge his ACCA sentencing enhancement on direct appeal. Courts that have considered procedural-default challenges to prisoners' <u>Johnson</u>-based § 2255 motions have consistently ruled that cause and prejudice excuse a prisoner's procedural default in the <u>Johnson</u> context. <u>E.g.,</u> <u>Duhart v. United States</u>, No. 08-60309-CR, 2016 WL 4720424, at *4 (S.D. Fla. Sept. 9, 2016) ("Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, '[b]y definition' a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal." (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 17 (1984))).

The Court has previously denied petitions filed by Mitchell seeking to challenge his status as an armed career criminal and his enhanced sentence under the ACCA. In each of those proceedings, the Court decided that Mitchell's claims were not properly before the Court. As alternative grounds for those decisions, the Court opined that, even if Mitchell's claims were properly before the Court, those claims would fail on the merits. Those decisions were before Johnson, Welch, and other decisions that are binding on the Court in these second or successive § 2255 proceedings. The Government does not contend that this Court's prior decisions preclude review on the merits of Mitchell's Johnson § 2255 Motion.

**C. ACCA's "Violent Felony" Framework**

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) who has three prior convictions for violent felonies or serious drug offenses is subject to a mandatory minimum sentence of 180 months in prison. 18 U.S.C. § 924(e). Without the prior qualifying convictions, a defendant convicted under § 922(g) is subject to a statutory maximum sentence of 120 months in prison. 18 U.S.C. § 924(a)(2).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force

21

clause"); (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the "enumerated-offenses clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In Johnson, the Supreme Court held that a sentence imposed under the residual clause of the ACCA violates due process. 135 S. Ct. at 2563. In Welch, the Supreme Court applied its holding in Johnson retroactively to ACCA cases on collateral review. 136 S. Ct. at 1268; see also In re Watkins, 810 F.3d 375, 383-84 (6th Cir. 2015) (same).

Johnson does not question sentencing enhancements under the ACCA's use-of-force or enumerated-offenses clauses. Johnson, 135 S. Ct. at 2563. "The government accordingly cannot enhance [a defendant's] sentence based on a prior conviction that constitutes a violent felony pursuant only to the residual clause." United States v. Priddy, 808 F.3d 676, 683 (6th Cir. 2015). "But a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated-offense[s] clause." Id.

"When determining which crimes fall within . . . the violent felony provision" of the ACCA, "federal courts use the categorical approach." United States v. Covington, 738 F.3d

759, 762 (6th Cir. 2013) (quotation marks omitted).[13] Using that approach, courts "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600 (1990).

"[T]here are two steps in applying the categorical approach to determine whether a prior conviction constitutes . . . a violent felony under the ACCA." Covington, 738 F.3d at 763. "First, a court must ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'" Id. (quoting Descamps, 133 S. Ct. at 2293). "[A] divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps, 133 S. Ct. at 2283.

If a statute is divisible, meaning that it "comprises multiple, alternative versions of the crime," a court uses a "modified categorical approach" and may "examine a limited class of documents," such as the indictment and jury instructions, "to determine which of a statute's alternative elements formed the

---

[13] Covington addresses the definition of "crime of violence" in U.S.S.G. § 4B1.2(a). 738 F.3d at 761-62. Guidelines decisions apply to ACCA cases because, "[w]hether a conviction is a 'violent felony' under the ACCA is analyzed in the same way as whether a conviction is a 'crime of violence' under . . . § 4B1.2(a)." United States v. McMurray, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

basis of the defendant's prior conviction."[14]  Id. at 2283-84.

"Where the defendant has pled guilty, these so-called Shepard

documents may include the 'charging document, written plea

agreement, transcript of plea colloquy, and any explicit factual

finding by the trial judge to which the defendant assented.'"

United States v. Denson, 728 F.3d 603, 608 (6th Cir. 2013)

(quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).

"[T]he question is whether the court documents establish that

the defendant necessarily admitted the elements of a predicate

offense through his plea."  United States v. McMurray, 653 F.3d

367, 377 (6th Cir. 2011) (quotation marks omitted).

The Supreme Court has clarified that a court should use the

modified categorical approach only when a statute "lists

multiple elements disjunctively," not when it "enumerates

---

[14] In United States v. Mitchell, the Sixth Circuit explained that
"[a] divisible statute is necessary but not sufficient for
application of the modified categorical approach."  743 F.3d
1054, 1063 (6th Cir. 2014).  The court further explained, "We
make explicit a step in the analysis that the Covington panel
alluded to implicitly: if a statute is divisible -- in that it
sets out one or more elements of the offense in the
alternative -- at least one, but not all of those alternative
elements must depart from: (1) the elements of the generic ACCA
crime (if the conviction is based on an enumerated offense); or
(2) the definitions provided in . . . the 'use of physical
force' clause . . . (if the conviction is based on a non-
enumerated offense)."  Id. at 1065.  The comments in Mitchell
appear to be dicta.  The Court need not determine whether this
portion of Mitchell controls because, as discussed below, each
of the Tennessee third degree burglary and aggravated assault
statutes under which Mitchell was convicted included at least
one alternative element that departed from the definition in the
ACCA's use-of-force and enumerated-offenses clauses.

various factual means of committing a single element." <u>Mathis</u> <u>v. United States</u>, 136 S. Ct. 2243, 2249, 2256 (2016).  A "court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."  <u>Id.</u> at 2256. It can do so by examining state law to determine (1) whether "a state court decision definitively answers the question," or (2) whether "the statute on its face . . . resolve[s] the issue."  <u>Id.</u>  Alternatively listed items are elements where they "carry different punishments" or where the statute "itself identif[ies]" them as "things [that] must be charged."  <u>Id.</u> They are means where the "statutory list is drafted to offer 'illustrative examples'" only.  <u>Id.</u>  "[I]f state law fails to provide clear answers," a court may take "a peek at the record documents" of the prior conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense."  <u>Id.</u> (alterations and quotation marks omitted). If the listed items are "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution."  <u>Id.</u>

After having determined which of a statute's alternative elements formed the basis of the defendant's prior conviction, or after having determined that the statute is indivisible, the second step in the categorical approach requires the court to

"ask whether the offense the statute describes, as a category, is a [violent felony]." Covington, 738 F.3d at 763.

"When determining whether a particular offense qualifies as a 'violent felony' under the use-of-force clause, [a court is] limited to determining whether that offense 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Priddy, 808 F.3d at 685 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). "The force involved must be 'violent force -- that is, force capable of causing physical pain or injury to another person.'" Id. (quoting Johnson v. United States, 559 U.S. 133, 140 (2010)).

When determining whether a particular offense qualifies as a violent felony under the enumerated-offenses clause, the "question is whether the elements of the prior conviction are equivalent to the elements of the generic definition of one of the offenses enumerated in . . . [§] 924(e)(2)(B)(ii)." Covington, 738 F.3d at 764. "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, 133 S. Ct. at 2281.

"If the offense 'sweeps more broadly' and 'criminalizes a broader swath of conduct' than [would] meet these tests, then the offense, as a category, is not a [violent felony]."

Covington, 738 F.3d at 764 (quoting Descamps, 133 S. Ct. at 2281, 2283, 2289-91).

### D. Analysis of Mitchell's Prior Convictions

Mitchell contends that, after Johnson, the convictions on which the sentencing court relied in sentencing him as an armed career criminal no longer qualify as ACCA predicates. (17-02341: ECF No. 1-1 at 7-11.) The Government contends that, even after Johnson, Mitchell has at least three ACCA-predicate convictions. (17-02341: ECF No. 6 at 26.) They are: (1) a 1986 Tennessee conviction for aggravated assault; (2) a second 1986 Tennessee conviction for aggravated assault; and (3) a 1986 Tennessee conviction for third degree burglary. (Id. at 23; see also PSR ¶¶ 29-31.)

Although Mitchell's PSR identified three other prior convictions as violent felonies under the ACCA, the Government does not rely on those convictions. The PSR identifies a 1986 Tennessee conviction for kidnapping (PSR ¶ 31), but the Government represents that the offense conduct for that conviction occurred on the same occasion as the offense conduct for Mitchell's second 1986 aggravated assault conviction.[15] (17-

---

[15] The Government requests the opportunity to brief whether the kidnapping conviction qualifies as a violent felony under the ACCA should it be outcome-determinative in deciding Mitchell's Johnson § 2255 Motion. As discussed below, because the ACCA-predicate status of the kidnapping conviction is not outcome-determinative here, no further briefing is necessary.

02341: ECF No. 6 at 23.)   The PSR also identifies two 1995 Tennessee convictions for burglary of a building (PSR ¶¶ 35-36), but the Government represents that state-court records confirm that those convictions were nolle prossed.   (17-02341: ECF No. 6 at 38.)

### 1.   Tennessee Third Degree Burglary Conviction

At the time of the offense conduct on which Mitchell's 1986 third degree burglary conviction was based, Tenn. Code Ann. § 39-3-404 provided:

> (a)(1)   Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house, with the intent to commit a felony.
>
> (2)   Every person convicted of this crime, on first offense, shall be imprisoned in the penitentiary for not less than three (3) years nor more than then (10) years.
>
> . . . .
>
> (b)(1)   Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years upon conviction for a first offense, and not less than five (5) years nor more than twenty-one (21) years upon conviction for a second or subsequent offense.
>
> . . . .

Tenn. Code Ann. § 39-3-404 (1982) (repealed) (additional penalty provisions omitted).   Section 39-3-404(a)(1) -- the "building provision" -- criminalized the breaking and entering into a non-dwelling house, and § 39-3-404(b)(1) -- the "safecracking provision" -- criminalized the opening or attempted opening of a vault, safe, or other secure place following a breaking and entering into a building.

In United States v. Caruthers, the Sixth Circuit addressed whether a defendant's prior conviction under § 39-3-404 qualified as a violent felony under the ACCA's enumerated-offenses clause.   458 F.3d 459, 475-76 (6th Cir. 2006).   The court determined that § 39-3-404 is "nongeneric along the 'building or structure' dimension, as it permitted third-degree burglary convictions for unlawful entry into coin receptacles and the like."   Id. (citing Fox v. State, 383 S.W.2d 25, 27 (Tenn. 1964)).   To use current terminology, § 39-3-404 "criminaliz[ed] a broader swath of conduct than" generic burglary.   Descamps, 133 S. Ct. at 2281.

Having determined that § 39-3-404 was "nongeneric," the Caruthers court considered whether the defendant "actually committed a generic burglary" as demonstrated by the available Shepard documents for his § 39-3-404 conviction.   Caruthers, 458 F.3d at 476 (quoting Taylor, 495 U.S. at 600).   Because the defendant's indictments showed that "he was actually convicted

of burglarizing buildings, even though the statute permitted convictions for burglary of non-buildings," Caruthers held that the defendant's § 39-3-404 convictions were for "generic burglaries" and qualified as ACCA predicates. Id.

Caruthers was decided before Descamps, in which the Supreme Court clarified that its "decisions authorize review of [Shepard] documents only when a statute defines burglary not . . . overbroadly, but instead alternatively." Descamps, 133 S. Ct. at 2286.

Following Descamps and Mathis, Mitchell contends that, not only is § 39-3-404 nongeneric or overbroad, as held by Caruthers, but also that it is also indivisible because the various ways the statute could be violated are different means of committing the same offense. (17-02341: see ECF No. 7 at 70-72, 74.) Mitchell's argument is that, because § 39-3-404 is both overbroad and indivisible -- the latter condition precluding any examination of Shepard documents -- his § 39-3-404 conviction cannot qualify as an ACCA predicate. (See id.) The Government argues that § 39-3-404 is divisible because it contains alternative elements, not means, and that the Court may examine Shepard documents to determine which alternative elements formed the basis of Mitchell's conviction. (17-02341: see ECF No. 6 at 35, 37-38.)

Section 39-3-404 as a whole is overbroad, as recognized by Caruthers. Nevertheless, § 39-3-404 is divisible. Section 39-3-404 on its face reflects a divisible structure: § 39-3-404(a)(1) criminalized the burglarizing of buildings other than dwellings, and § 39-3-404(b)(1) criminalized the burglarizing of vaults, safes, etc. (otherwise known as safecracking). Tennessee courts recognized that § 39-3-404 criminalized multiple alternative offenses, not a single offense that could be committed in multiple ways. E.g., Englett v. State, No. 01-C-019103CC00086, 1991 WL 255894, at *2 (Tenn. Crim. App. Dec. 5, 1991) ("As to the burglary and safecracking charges, both of these offenses were prohibited at that time by Tenn. Code Ann. § 39-3-404.").[16] Offenses under §§ 39-3-404(a)(1) and (b)(1) also carried different punishments. Tenn. Code. Ann. §§ 39-3-404(a)(2)-(4), (b)(1)-(2). Both the text of § 39-3-404 and Tennessee case law construing it exhibit Mathis's hallmarks of divisibility. Mathis, 136 S. Ct. at 2256.

---

[16] Although some Tennessee decisions treat the safecracking provision as a sentencing enhancement, see, e.g., State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App. 1982) (construing a substantially similar prior version of § 39-3-404), that does not mean that § 39-3-404 as a whole merely "enumerate[d] various factual means of committing a single element," such as a single "locational element," Mathis, 136 S. Ct. at 2249-50. Even if understood as a sentencing enhancement, the safecracking provision "provide[d] for greater punishment if the burglar open[ed] a vault, safe, or other secure place after entry," which assumed that a "burglarious entry" had already occurred. Lindsay, 637 S.W.2d at 890. Section 39-3-404(b)(1) criminalized distinct, additional conduct that § 39-3-404(a)(1) did not.

Because § 39-3-404 is divisible, the Court may examine Shepard documents to determine which of § 39-3-404's alternative elements formed the basis of Mitchell's prior conviction. See Descamps, 133 S. Ct. at 2283-84.

Mitchell's Shepard documents demonstrate that he was convicted under § 39-3-404(a)(1), the building provision, not under § 39-3-404(b)(1), the safecracking provision. A Tennessee grand jury charged that Mitchell, on February 3, 1986, "did commit the offense of burglary in the 3rd degree by unlawfully, feloniously and burglariously breaking into and entering THE BUSINESS HOUSE OF ACE APPLIANCE CO. . . . with intent unlawfully, feloniously and burglariously to steal, take and carry away the personal property therein." (17-02341: ECF No. 6-3 at 59.) Mitchell's record of judgment shows that he pled guilty to this charged offense. (Id. at 60-63.)

Having confirmed that Mitchell was convicted under § 39-3-404's building provision, the Court must determine whether a burglary offense under that provision, as a category, is a violent felony. See Covington, 738 F.3d at 763. The Government contends that it is.

At the time of Mitchell's conviction, a third degree burglary conviction under § 39-3-404's building provision required the state to prove four elements: "(1) the breach, (2) the entry, (3) any house of another other than dwelling

house, and (4) felonious intent." _Petree v. State_, 530 S.W.2d 90, 94 (Tenn. Crim. App. 1975); _see also_ _Duchac v. State_, 505 S.W.2d 237, 239 (Tenn. 1973) (same).[17]   The Sixth Circuit has noted that, under § 39-3-404, the entry must be unlawful. _Caruthers_, 458 F.3d at 475 (citing Tennessee authority).   In _Taylor_, the Supreme Court defined generic burglary for purposes of the ACCA's enumerated-offenses clause as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599.   By criminalizing the unlawful entry into a non-dwelling "house" (i.e., a building or structure) with intent to commit a felony, the text of § 39-3-404's building provision appears to have criminalized conduct constituting a violent felony under the enumerated-offenses clause.

Tennessee case law, however, shows that § 39-3-404's building provision is overbroad.   In _Fox_, the Tennessee Supreme Court addressed whether a third degree burglary conviction could be sustained where a defendant lawfully entered a public phone booth, but broke and opened a coin receptacle inside the phone booth.   214 S.W.2d at 26-27.   At the time, Tenn. Code Ann. § 39-

---

[17] _Petree_ and _Duchac_ addressed Tennessee third degree burglary under previously styled Tenn. Code Ann. § 39-904, which, as discussed below, had identical language, in relevant respects, to Tenn. Code Ann. § 39-3-404.   _See_ _Petree_, 530 S.W.2d at 94; _Duchac_, 505 S.W.2d at 239.

904, a predecessor version of § 39-3-404, provided: "Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling-house, with the intent to commit a felony" ("§ 39-904's building provision"). Tenn. Code Ann. § 39-904 (1955) (effective Jan. 1, 1956) (repealed). Section 39-904 also provided: "Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished . . . ." ("§ 39-904's safecracking provision"). See Public Acts of 1955, ch. 321, 1188.[18] Fox held that the "[d]efendants could lawfully enter the telephone booth, which is a business house within the meaning of Section 39-904, but by breaking into the money receptacle after lawful entry they would be guilty of burglary in the third degree." 214 S.W.2d at 27.

---

[18] Section 39-904's safecracking provision does not appear in the 1955 edition of the Code. The 1955 edition of the Code was enacted on February 2, 1955. Public Acts of 1955, ch. 6, 53-54. Section 39-904's safecracking provision was enacted on March 18, 1955. Public Acts of 1955, ch. 321, at 1188 (amending § 10913, a predecessor version of § 39-904); see Tenn. Code Ann. at 909, 970 (2009) (showing that § 10913 of the 1932 Code became § 39-904 of the 1955 Code). Section 39-904's safecracking provision took effect immediately upon its passage and was incorporated into § 39-904 thereafter. See State ex rel. Wooten v. Bomar, 352 S.W.2d 5, 5-6 (Tenn. 1961) (discussing the addition of § 39-904's safecracking provision to § 39-904).

34

Although § 39-904 included a safecracking provision, Fox's holding does not rely on or discuss it. Section 39-904's safecracking provision criminalized the opening or attempted opening of "any vault, safe, or other secure place" after first "break[ing] and enter[ing] . . . any building," but the defendants in Fox had not broken and entered into the phone booth itself. Fox, 383 S.W.2d at 27. In holding that the defendants' conduct, opening a coin receptacle after having lawfully entered a public phone booth, violated § 39-904's building provision, Fox relied on the reasoning of Page v. State, 98 S.W.2d 98 (Tenn. 1936). Id.

In Page v. State, the Tennessee Supreme Court addressed whether a burglary conviction could be sustained where the defendant was lawfully inside a "business house," but broke and entered into a room within the business house. 98 S.W.2d at 98-99. The Page defendants had lawfully been inside a hotel, but broke into the hotel auditor's office and stole personal property. Id. at 98. They had not broken and entered into the hotel building itself.

Tennessee's burglary statute applying to dwellings, then § 10910, had a corresponding provision, § 10911, that criminalized the breaking of the "premises, or any safe or receptacle therein" even without a breaking into the dwelling

itself.  See Tenn. Code Ann. §§ 10910-11 (1932) (repealed).[19]
The court explained that one could be convicted of "technical
burglary," as defined in § 10910, "if, though lawfully in a
dwelling house in the first instance, he breaks and enters into
a room of such premises with intent to commit a felony."  Page,
98 S.W.2d at 98-99.   Although Tennessee's burglary statute
applicable to non-dwellings, then § 10913, did not have a
corresponding provision that criminalized the breaking of the
"premises, or any safe or receptacle therein" without a breaking
into the non-dwelling itself, see Tenn. Code Ann. §§ 10910-19,
Page concluded that, "[u]pon the same reasoning, one, although
lawfully in a business house, commits the offense described in
section 10913 of the Code when he breaks and enters into a room
of that business house, which he has no right to enter, for the
purpose of committing a felony."  98 S.W.2d at 99.

Just as Page applied § 10911, or its principle, to § 10913,
Fox reasoned that "Section 39-902 [formerly, § 10911], or at
least the same principle, applie[d] also to Section 39-904."
Fox, 214 S.W.2d at 26-27.  Fox concluded:

---

[19] Section 10910 provided: "Burglary is the breaking and entering
into a dwelling house, by night, with intent to commit a
felony."  Section 10911 provided: "Any person who, after having
entered upon the premises mentioned in the foregoing section,
with intent to commit a felony, shall break any such premises,
or any safe or receptacle therein, shall receive the same
punishment as if he had broken into the premises in the first
instance."

> The holding in the Page case applies to the facts in this case. Defendants could lawfully enter the telephone booth, which is a business house within the meaning of Section 39-904, but by breaking into the money receptacle after lawful entry they would be guilty of burglary in the third degree.

Id. at 27.

In Heald v. State, the Tennessee Court of Criminal Appeals was asked to overrule Fox's holding "that the fact that a telephone booth was open to the public and hence lawfully entered did not prevent one breaking into the money receptacle from being guilty of third degree burglary." 472 S.W.2d 242, 243 (Tenn. Crim. App. 1970). Heald declined, opining, "We, being an intermediate appellate court, have no authority to overrule a clear and controlling authority promulgated by our Supreme Court." Id.

By the time of Mitchell's 1986 third degree burglary conviction, § 39-904's building and safecracking provisions had been restyled as §§ 39-3-404(a)(1) and (b)(1) respectively. Although restyled, the offense-conduct language remained the same. In Caruthers, the Sixth Circuit concluded that § 39-3-404 as a whole was overbroad or "nongeneric" because "it permitted third-degree burglary convictions for unlawful entry into coin receptacles and the like." 458 F.3d at 476 (citing Fox, 214 S.W.2d at 27). Fox was a building-provision case, not a safecracking-provision case. Fox has never been overruled.

<u>Caruthers</u>'s holding that § 39-3-404 is overbroad because of <u>Fox</u> is binding on the Court. <u>Fox</u> makes § 39-3-404(a)(1) overbroad. <u>Walker v. United States</u>, Cv. No. 14-02021, Cr. No. 07-20243, slip op. at 29-39 (W.D. Tenn. Apr. 20, 2017) (holding that, after <u>Descamps</u> and under <u>Caruthers</u> and <u>Fox</u>, a conviction under Tenn. Code Ann. 39-3-404(a)(1) is not categorically a violent felony under the ACCA).

The Government contends that the "Sixth Circuit has . . . specifically held that Tennessee's 1982 third degree burglary statute is a 'burglary' (and therefore a 'violent felony') for purposes of the ACCA." (17-02341: ECF No. 6 at 35 (citing <u>United States v. Taylor</u>, 800 F.3d 701, 719 (6th Cir. 2015); <u>Caruthers</u>, 458 F.3d at 475).) In dicta, the <u>Taylor</u> court addressed the effect if any <u>Johnson</u> had on prior Sixth Circuit authority addressing Tennessee third degree burglary for ACCA purposes. 800 F.3d at 719 ("Finally, this Court will determine whether <u>Johnson</u> affects whether Taylor's 1987 conviction for third degree burglary in Tennessee qualifies as a predicate violent felony under the ACCA. We are not required to do so, however, since it has already been determined, <u>supra</u>, that Taylor has three predicate offenses for ACCA purposes which <u>Johnson</u> does not affect."). <u>Taylor</u> explained:

> In <u>United States v. Caruthers</u>, this Court found that third degree burglary under the pre-1989 Tennessee statute was "generic" burglary under the

38

ACCA's enumerated clause because: (1) the case law showed that the statute did in fact require unlawful entry; and, (2) so long as the indictment shows that the defendant broke and entered into an actual building, the crime committed is a generic burglary under the ACCA. In the case *sub judice,* the PSR indicates that Taylor's 1982 conviction for burglary in the third degree resulted from him breaking into a store. Under Caruthers*,* therefore, Taylor's 1987 conviction qualifies as a generic burglary under the "enumerated offenses" clause. Accordingly, Johnson leaves unaffected Taylor's ACCA enhancement based on his 1987 conviction for burglary in the third degree under Tennessee law.

Id. at 719-20 (citation omitted).

Caruthers's holding that § 39-3-404 is overbroad because of Fox remains good law. Caruthers's pre-Descamps endorsement of a fact-based analysis in determining whether a prior conviction under an overbroad statute qualifies as a violent felony under the ACCA does not. Under Descamps, this Court may examine the Shepard documents for Mitchell's § 39-3-404 conviction to determine which of the statute's alternative offenses formed the basis of that conviction, but the Court may not examine the Shepard documents to determine whether the factual basis for that conviction amounts to generic burglary. The Court may not conclude that Mitchell's § 39-3-404(a)(1) offense qualifies as an ACCA predicate because the indictment alleged that a building, in fact, was burglarized.

Sixth Circuit decisions, including Taylor, have previously endorsed that kind of fact-based analysis. See, e.g.,

Caruthers, 458 F.3d at 474-76 (analyzing a pre-1989 Tennessee third degree burglary offense); see also, e.g., Taylor, 800 F.3d at 719-20 (endorsing, in dicta, Caruthers's method of analysis of a pre-1989 Tennessee third degree burglary offense). Descamps and Mathis, however, rule out such a fact-based approach. See Mathis, 136 S. Ct. at 2251 ("How a given defendant actually perpetrated the crime -- what we have referred to as the 'underlying brute facts or means' of commission -- makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." (citation omitted)). Taylor decided that Johnson, which invalidated the residual clause, did not overrule or undermine Caruthers, a case addressing the enumerated-offenses clause. See Taylor, 800 F.3d at 720 ("Under Caruthers, therefore, Taylor's 1987 conviction qualifies as a generic burglary under the 'enumerated offenses' clause. Accordingly, Johnson leaves unaffected Taylor's ACCA enhancement based on his 1987 conviction for burglary in the third degree under Tennessee law."). Taylor did not cite Descamps or Mathis or address whether and to what extent those intervening Supreme Court decisions undermine the fact-based analysis used in Caruthers. See United States v. Simmons, No. 3:13-cr-00066, at *6-7 (M.D. Tenn. July 21, 2016) ("While the Sixth Circuit in both Caruthers and Taylor looked at the underlying charging

documents to determine whether the defendant 'actually committed a generic burglary' <u>Mathis</u> now forecloses that approach." (citation omitted)).

Because § 39-3-404(a)(1) could be violated where the "entry into, or remaining in, a building or structure" was lawful, a § 39-3-404(a)(1) offense is broader than generic burglary. Mitchell's 1986 Tennessee conviction for third degree burglary is no longer a violent felony under the ACCA.

## 2. Tennessee Aggravated Assault Convictions

After <u>Johnson</u>, without counting Mitchell's third degree burglary conviction, Mitchell has at most two ACCA-predicate convictions. Those are his two 1986 Tennessee aggravated assault convictions. Mitchell also has a 1986 Tennessee kidnapping conviction which may qualify as a violent felony under the ACCA, but the Government agrees that the offense conduct for that conviction occurred on the same occasion as the offense conduct for Mitchell's second 1986 aggravated assault conviction.[20] Mitchell's kidnapping conviction and second aggravated assault conviction cannot count as two ACCA-predicate convictions because they were not "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Mitchell has at most two ACCA-predicate convictions after <u>Johnson</u>.

---

[20] The Government does not provide any <u>Shepard</u> documents for Mitchell's kidnapping conviction.

"[A]ggravated assault is not an enumerated crime" under the ACCA. McMurray, 653 F.3d at 373. The Government contends, however, that Mitchell's aggravated assault convictions qualify under the ACCA's use-of-force clause.

The Government acknowledges that, for one of Mitchell's aggravated assault convictions, because the Shepard documents are unclear, it is possible that Mitchell's conviction could have been based on reckless conduct. (17-02341: ECF No. 6 at 27.) In McMurray, the Sixth Circuit "conclude[d] that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct." 653 F.3d at 375. McMurray's holding would preclude that aggravated assault conviction from qualifying as an ACCA predicate.

The Government resists that conclusion by arguing that McMurray has been undermined by Voisine v. United States, 136 S. Ct. 2272 (2016). (17-02341: ECF No. 6 at 29-30.) The Government contends that "after Voisine, convictions based on reckless conduct can qualify as violent felonies under the ACCA." (Id. at 32.)

Voisine addressed whether 18 U.S.C. § 922(g)(9), which makes it a crime for anyone who has been convicted of a "misdemeanor crime of domestic violence" to possess a firearm, extends to misdemeanor assault convictions based on reckless conduct. 136 S. Ct. at 2276. Voisine held that it does. Id.

at 2282.  Courts in this Circuit, however, have rejected the argument that _Voisine_ has undermined _McMurray_'s holding that crimes committed recklessly cannot qualify as violent felonies under the ACCA's use-of-force clause.  E.g., United States v. Buford, No. 04-20481, 2017 U.S. Dist. LEXIS 69068, at *24 (W.D. Tenn. Apr. 26, 2017); Davis v. United States, Nos. 3:01-CR-83-RLJ-HBG-1, 3:16-CV-688-RLJ, 2017 WL 1380558, at *2-3, *9 (E.D. Tenn. Apr. 17, 2017); United States v. Wehunt, ___ F. Supp. 3d ___, No. 1:16-cr-17-1, 2017 WL 347544, at *2 (E.D. Tenn. Jan. 24, 2017).

The Court is persuaded by the reasoning of those decisions. _McMurray_ remains good law.  One of Mitchell's aggravated assault convictions does not qualify as a violent felony under the ACCA because it may have been based on reckless conduct.  At most, only one of Mitchell's aggravated assault convictions qualifies as an ACCA predicate.

### E. Briefing of Kidnapping Conviction Unnecessary

It is unnecessary for the Government to brief whether Mitchell's 1986 Tennessee conviction for kidnapping qualifies as a violent felony under the ACCA.  Even if it were to qualify, Mitchell would have at most two ACCA-predicate convictions.  To the extent the Government requests permission for further briefing, that request is DENIED.

43

Mitchell no longer has at least three ACCA-predicate convictions. He is entitled to relief under <u>Johnson</u>.

## IV. Conclusion

For the foregoing reasons, Mitchell's <u>Johnson</u> § 2255 Motion is GRANTED.

Because Mitchell is entitled to relief under <u>Johnson</u>, the sentence in Criminal Case No. 99-20272 is VACATED. The Court in its discretion may correct a sentence without requiring the production of the prisoner. <u>See</u> 28 U.S.C. § 2255(c). Mitchell has served more than the ten-year statutory maximum term under 18 U.S.C. § 924(a)(2). Mitchell is sentenced to time served, to be followed by a three-year period of supervised release. All other terms and conditions the Court imposed in its Judgment in Criminal Case No. 99-20272 are reimposed. (99-20272: ECF No. 143 at 83.) This order shall take effect 10 days from entry.[21]

So ordered this 5th day of July, 2017.

---

[21] Mitchell's remaining motions seek lesser or the same relief as the relief he seeks in his <u>Johnson</u> § 2255 Motion. Because that motion is granted, the 17-02341 Motion for Discovery, the 17-02341 First Motion to Dismiss, the 17-02341 Second Motion to Dismiss, the 99-20272 First Motion for Hearing, the 99-20272 Second Motion to Dismiss, the 99-20272 Third Motion to Dismiss, and the 99-20272 Second Motion for Hearing are DENIED as moot.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE